IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**1:03CV1575**

| | |
|---|---|
| SAIED N. HAMAD<br>783 Watten Lane<br>Westerville, Ohio 43081,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF CLEVELAND<br>601 Lakeside Avenue, N.E.<br>Cleveland, Ohio 44114,<br><br>    and<br><br>JAMES J. DUNN, in his individual capacity<br>    and in his official capacity as a police<br>    officer for the City of Cleveland<br>Cleveland Police Department, Sixth District<br>881 East 152nd Street<br>Cleveland, Ohio 44110,<br><br>    and<br><br>JOSEPH SEDLAK, in his individual capacity<br>    and in his official capacity as a police<br>    officer for the City of Cleveland<br>Cleveland Police Department, Fourth District<br>9333 Kinsman Road<br>Cleveland, Ohio 44104 | CASE NO.<br><br>JUDGE   **JUDGE GAUGHAN**<br><br>**MAG JUDGE HEMANN**<br><br><br>**COMPLAINT FOR MONEY<br>DAMAGES**<br><br>(Jury Demand Endorsed Hereon) |

and                                          )
                                             )
MICHAEL BENZ, in his individual capacity     )
        and in his official capacity as a police  )
        officer for the City of Cleveland    )
Cleveland Police Department, Sixth District  )
881 East 152nd Street                       )
Cleveland, Ohio 44110,                       )
                                             )
        and                                  )
                                             )
ROBERT A. CERBA, JR., in his individual      )
        capacity and in his official capacity  )
        as a police officer for the City of  )
        Cleveland                            )
Cleveland Police Department, Second District )
3481 Fulton Road                             )
Cleveland, Ohio 44109,                       )
                                             )
        and                                  )
                                             )
SCOTT W. HUFF, in his individual capacity    )
        and in his official capacity as a police  )
        officer for the City of Cleveland    )
Cleveland Police Department, Second District )
3481 Fulton Road                             )
Cleveland, Ohio 44109,                       )
                                             )
        and                                  )
                                             )
DAVID KORNATOWSKI, in his individual         )
        capacity and in his official capacity as  )
        a police officer for the City of     )
        Cleveland                            )
Cleveland Police Department, Second District )
3481 Fulton Road                             )
Cleveland, Ohio 44109,                       )
                                             )
        and                                  )
                                             )
LUZ RODRIGUEZ, in her individual capacity    )
        and in her official capacity as an   )
        institutional guard for the City of  )
        Cleveland                            )
Cleveland Police Department, Justice Center  )
1300 Ontario Street                          )
Cleveland, Ohio 44113,                       )

2

|   |   |
|---|---|
| and | ) |
|   | ) |
|   | ) |
| PROACTIVE SPECIAL SECURITY | ) |
|       SERVICES, INC. | ) |
| c/o Kevin F. Callahan, Director | ) |
| Proactive Ohio Operations Management | ) |
| 23911 Lake Road | ) |
| Bay Village, Ohio 44140, | ) |
|   | ) |
| and | ) |
|   | ) |
| JACOBS INVESTMENTS, INC. | ) |
| 1231 Main Avenue | ) |
| Cleveland, Ohio 44113, | ) |
|   | ) |
| and | ) |
|   | ) |
| SHOOTERS ON THE WATER, INC. | ) |
| 1148 Main Avenue, Suite 4 | ) |
| Cleveland, Ohio 44113, | ) |
|   | ) |
| and | ) |
|   | ) |
| JOHN DOE 1, in his individual capacity and | ) |
|       in his official capacity as a police | ) |
|       officer for the City of Cleveland, | ) |
|   | ) |
| and | ) |
|   | ) |
| JOHN DOE 2, in his individual capacity and | ) |
|       in his official capacity as an | ) |
|       institutional guard for the City of | ) |
|       Cleveland, | ) |
|   | ) |
| and | ) |
|   | ) |
| JOHN DOE 3, in his individual capacity and | ) |
|       in his official capacity as a doctor | ) |
|       for the City of Cleveland, | ) |
| Cleveland Police Department, Justice Center | ) |
| 1300 Ontario Street | ) |
| Cleveland, Ohio 44113, | ) |
|   | ) |
|          Defendants. | ) |

3

Plaintiff, Saied N. Hamad ("Hamad"), for his Complaint seeking monetary damages against Defendants, the City of Cleveland, Ohio (the "City"), James J. Dunn ("Dunn"), Joseph Sedlak ("Sedlak"), Michael Benz ("Benz"), Robert A. Cerba, Jr. ("Cerba"), Scott W. Huff ("Huff"), David Kornatowski ("Kornatowski"), Luz Rodriguez ("Rodriguez"), John Doe 1, John Doe 2, and John Doe 3, acting in their respective individual and official capacities, and Proactive Special Security Services, Inc. ("Proactive"), Jacobs Investments, Inc. ("Jacobs") and Shooters on the Water, Inc. ("Shooters"), and each of them, jointly and severally, hereby claims, alleges, states, and avers as follows:

## NATURE OF ACTION, JURISDICTION AND VENUE

1.     This is a civil rights action for police brutality and the use of unconstitutionally excessive force arising under the provisions of Section 1 of the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, as amended, seeking monetary damages to redress the deprivation and violation by the City and its officials, Dunn, Sedlak, Benz, Cerba, Huff, Kornatowski, Rodriguez, John Doe 1 and John Doe 2 (hereinafter sometimes collectively referred to as the "City Officers") and John Doe 3, while acting under the color of law, of Hamad's rights, privileges and immunities secured to him by the Constitution and laws of the United States, including without limitation rights secured to Hamad by the Fourth and Fourteenth Amendments to the Constitution.

2.     This Court has subject matter jurisdiction over the federal questions presented herein pursuant to the grant of general federal jurisdiction, 28 U.S.C. § 1331, and the civil rights jurisdictional statute, 28 U.S.C. §§ 1343(a)(3) and (4). Notwithstanding the lack of a jurisdictional amount in controversy requirement for the Court's federal question jurisdiction, there exists among the parties an actual controversy, justiciable in nature, in which the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

4

3. The actions of the City and the City Officers also violated and deprived Hamad of personal rights and liberties secured to him by the Constitution of the State of Ohio and other provisions of Ohio law. Hamad also asserts claims arising under the statutes and common laws of the State of Ohio against all Defendants, and each of them, jointly and severally.

4. This Court has jurisdiction over the state law claims asserted herein under principles of pendent, ancillary, and supplemental (28 U.S.C. § 1367) jurisdiction.

5. This Court has jurisdiction over the persons of Defendants, and each of them, all of whom reside in Ohio within this judicial district, and/or conduct their business activities in Ohio within this judicial district.

6. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because all Defendants reside within the Northern District of Ohio and because it is the judicial district within which a substantial part of the events giving rise to the claims for relief occurred.

## THE PARTIES

7. Hamad is an individual residing in Westerville, Franklin County, Ohio.

8. The City is a municipal corporation organized and existing under the laws of the State of Ohio. At all times material to this action, the City employed Dunn, Sedlak, Benz, Cerba, Huff, Kornatowski and John Doe 1 as duly-authorized police officers. At all times material to this action, the City employed Rodriguez and John Doe 2 as duly-authorized institutional guards.

9. Dunn was and is employed by the City as a police officer. At all times material to this action, Dunn was acting as the employee, agent and servant of the City and within the course and scope of his employment. Dunn is being sued herein in both his individual and official capacities.

5

10. On information and belief, at some times material to this action, Dunn was acting within the course and scope of his part-time employment by Jacobs as a security guard for the Nautica complex in the Flats area of Cleveland. On information and belief, Dunn's part-time employment was authorized and sanctioned by the City, which permitted Dunn to wear his Cleveland Police Department uniform and carry his departmentally-issued weapon while acting as a Jacobs employee.

11. Sedlak was and is employed by the City as a police officer. At all times material to this action, Sedlak was acting as the employee, agent and servant of the City and within the course and scope of his employment. Sedlak is being sued herein in both his individual and official capacities.

12. On information and belief, at some times material to this action, Sedlak was acting within the course and scope of his part-time employment by Proactive as a security guard for Shooters restaurant in the Flats area of Cleveland. On information and belief, Sedlak's part-time employment was authorized and sanctioned by the City, which permitted Sedlak to wear his Cleveland Police Department uniform and carry his departmentally-issued weapon while acting as a Proactive employee.

13. Benz was and is employed by the City as a police officer. At all times material to this action, Benz was acting as the employee, agent and servant of the City and within the course and scope of his employment. Benz is being sued herein in both his individual and official capacities.

14. On information and belief, at some times material to this action, Benz was acting within the course and scope of his part-time employment by Jacobs as a security guard for the Nautica complex in the Flats area of Cleveland. On information and belief, Benz's part-time employment was authorized and sanctioned by the City, which permitted Benz to wear his

6

Cleveland Police Department uniform and carry his departmentally-issued weapon while acting as a Jacobs employee.

15.    Cerba was and is employed by the City as a police officer.  At all times material to this action, Cerba was acting as the employee, agent and servant of the City and within the course and scope of his employment.  Cerba is being sued herein in both his individual and official capacities.

16.    Huff was and is employed by the City as a police officer.  At all times material to this action, Huff was acting as the employee, agent and servant of the City and within the course and scope of his employment.  Huff is being sued herein in both his individual and official capacities.

17.    Kornatowski was and is employed by the City as a police officer.  At all times material to this action, Kornatowski was acting as the employee, agent and servant of the City and within the course and scope of his employment.  Kornatowski is being sued herein in both his individual and official capacities.

18.    John Doe 1 was and may still be employed by the City as a police officer.  At all times material to this action, John Doe 1 was acting as the employee, agent and servant of the City and within the course and scope of his employment.  John Doe 1 is being sued herein in both his individual and official capacities.

19.    Rodriguez was and may still be employed by the City as an institutional guard.  At all times material to this action, Rodriguez was acting as the employee, agent and servant of the City and within the course and scope of her employment.  Rodriguez is being sued herein in both her individual and official capacities.

20.    John Doe 2 was and may still be employed by the City as an institutional guard.  At all times material to this action, John Doe 2 was acting as the employee, agent and servant of

7

the City and within the course and scope of his employment. John Doe 2 is being sued herein in both his individual and official capacities.

21.    John Doe 3 was and may still be employed by the City as doctor. At all times material to this action, John Doe 3 was acting as the employee, agent and servant of the City and within the course and scope of his employment. John Doe 3 is being sued herein in both his individual and official capacities.

22.    At all times material to this action, the City and the City Officers are state actors for purposes of the Fourth and Fourteenth Amendments to the Constitution of the United States, and have acted under color of law and pursuant to official municipal policy, custom or usage.

23.    On information and belief, Proactive is a Maryland corporation having its principal place of business at 15200 Shady Grove Road, Suite 350, Rockville, Maryland 20850. On information and belief, Proactive does business in Ohio through its operating division, Proactive Ohio Operations Management, located in Bay Village, Cuyahoga County, Ohio.

24.    Proactive employed Sedlak as a part-time security guard during his off duty hours from the Cleveland Police Department. At some times material to this action, Sedlak was acting as the employee, agent and servant of Proactive and within the course and scope of his employment by Proactive. On information and believe, at all material times, Proactive entered into a contract with Shooters to provide off-duty Cleveland police officers, including without limitation Sedlak, to serve as security guards and personnel at the Shooters restaurant in the Flats area of Cleveland.

25.    On information and belief, Jacobs in an Ohio corporation having its principal place of business in Cleveland, Cuyahoga County, Ohio. On information and belief, Jacobs owns and operates the Nautica complex in the Flats area of Cleveland.

8

26.     Jacobs employed Dunn as a part-time security guard during his off-duty hours from the Cleveland Police Department.  At some times material to this action, Dunn was acting as the employee, agent and servant of Jacobs and within the course and scope of his employment by Jacobs.  On information and belief, at all material times, Jacobs hires, employs and maintains off-duty Cleveland police officers, including without limitation Dunn, to serve as security guards and personnel at the Nautica complex in the Flats area of Cleveland, and to respond to incidents or events involving nearby establishments including, without limitation, the Shooters restaurant in the Flats.

27.     On information and belief, Jacobs employed Benz as a part-time security guard during his off-duty hours from the Cleveland Police Department.  On information and belief, at some times material to this action, Benz was acting as the employee, agent and servant of Jacobs and within the course and scope of his employment by Jacobs.  On information and belief, at all material times, Jacobs hires, employs and maintains off-duty Cleveland police officers, including without limitation Benz, to serve as security guards and personnel at the Nautica complex in the Flats area of Cleveland, and to respond to incidents or events involving nearby establishments including, without limitation, the Shooters restaurant in the Flats.

28.     On information and belief, Shooters is an Ohio corporation having its principal place of business in Cleveland, Cuyahoga County, Ohio.  On information and belief, Shooters owns and operates the Shooters restaurant in the Flats area of Cleveland.

29.     On information and belief, at all material times, Shooters entered into a contract arrangement with Proactive to receive security services from off-duty Cleveland police officers, including without limitation Sedlak, acting as security guards and personnel at the Shooters restaurant in the Flats area of Cleveland.  On information and belief, Shooters also willingly accepted, and provided compensation for, security services from off-duty Cleveland police

9

officers employed by Jacobs, including without limitation Dunn and Benz, acting as security guards and personnel for the Nautica complex and in the area around the Shooters restaurant.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

30.     On or about Saturday evening, July 28, 2001, Hamad went with a friend to Shooters restaurant in the Flats area of Cleveland.  During the approximately three hours he spent at the restaurant, he had three or four alcoholic drinks.

31.     In the early morning hours of Sunday, July 29, 2001, Hamad was standing peaceably outside the Shooters restaurant when he was approached by Dunn, Sedlak, and Benz and instructed to leave.  Hamad explained to the officers, who were wearing Cleveland Police Department uniforms and carrying firearms, that he had been drinking and should not drive a motor vehicle; therefore, he had to wait for his friend who was still inside the Shooters restaurant to drive him home.  The officers refused to allow Hamad back into Shooters in order to get his friend so that they could leave, and likewise refused to let Hamad continue to wait for his friend outside the restaurant.

32.     Benz escorted Hamad to the front of the business establishment next door to Shooters and told Hamad to wait there.  However, Dunn then came up to Hamad and told him to leave immediately.  As Hamad turned to walk away, Dunn approached Hamad from behind, bodily picked him up off the ground and slammed him face first into the pavement, breaking three bones on the left side of Hamad's face and rendering him unconscious.

33.     Hamad does not remember regaining consciousness until many hours later when he awoke to find himself in a City jail.  In addition to the broken bones in the area around his left eye and cheekbone, Hamad exhibited all of the symptoms of a brain concussion – severe headache (with palpable knots all over his head), numbness on all areas of his face, photo sensitivity from dilation of his eyes, nausea and vomiting.  Hamad's arms and legs were also

covered in large bruises. Hamad had lost sensation in his face, mouth, and hands. Hamad's wrists were swollen, lacerated and bleeding. In addition, Hamad's neck was extremely tender and painful.

34. Hamad asked to see a doctor and explained his symptoms to the doctor provided by the City (John Doe 3). John Doe 3 said the only thing he was permitted to do was to give Hamad some aspirin for the pain. John Doe 3 then left and never returned with the aspirin. Hamad was transported to another district where he again requested medical attention. Hamad informed institutional guard John Doe 2 of his symptoms and specifically requested medical attention. John Doe 2 informed Hamad that he would inform the officer on duty, John Doe 1, of Hamad's request. However, Hamad still did not receive any medical attention. Accordingly, and as a result of the City's wrongful indifference to Hamad's injuries, pain and suffering, and medical condition which required treatment, Hamad was unable to obtain medical treatment for his injuries or relief for his pain and suffering for almost 72 hours until he was released on bail on Tuesday, July 31, 2001.

35. On information and belief, during the period of several hours Hamad was either unconscious or suffered from trauma-induced amnesia, Hamad believes he was further injured by the City Officers' use of excessive force. After suffering the severe head trauma when Dunn slammed him into the pavement and while handcuffed and being put in a police cruiser, Cerba punched Hamad in the face. In addition, Dunn, Sedlak, Benz, Cerba, Huff and Kornatowski further injured Hamad and severely bruised his arms and legs.

36. On information and belief, once transported to the police station, Huff, Kornatowski and Rodriguez further used excessive force and injured Hamad by causing or worsening his physical injuries and head, face and neck trauma.

11

37.     The force used against Hamad by Dunn body slamming his face into the pavement, by Cerba in punching Hamad in the face, and by all of the City Officers in subduing him while on the pavement, in the police car and at the police station was excessive and unreasonable under all of the circumstances, particularly in view of the fact that Hamad was subdued and under restraint from and after the moment Dunn knocked him out.

38.     The City also exhibited deliberate indifference to Hamad's rights and well being by refusing and neglecting to provide medical attention, care and treatment of his known injuries, which caused and/or contributed to the pain and suffering he experienced until his release on July 31, 2001.

39.     As a direct and proximate result of the brutal beating Hamad received and the other foregoing wrongful acts and omissions by the City and Dunn, Sedlak, Benz, Cerba, Huff, Kornatowski, Rodriguez, John Doe 1, John Doe 2 and John Doe 3, and each of them, Hamad has sustained severe and debilitating personal injuries as well as severe pain and suffering. He has suffered profound memory loss, drastically diminished memory retention, loss of focus and concentration, depression, nerve damage, and painful headaches as a result of the severe head trauma Hamad sustained. Hamad continues to suffer from hand and wrist pain due to nerve damage caused by excessively tight handcuffs. In addition, Hamad had begun to stutter in a pronounced fashion as a result of his neurological injuries.

40.     As a consequence of these physical disabilities, Hamad was able to finish his third year at the University of Cincinnati College of Law and graduate in May 2002 only with great difficulty and suffered noticeably impaired performance. Hamad has been compelled to postpone the commencement of his career as an attorney, and the taking of the Ohio bar examination as a result of the forgoing events.

12

41.     Hamad's injuries and their direct consequences continue to affect him and his health adversely, and are reasonably expected to continue to do so for the indefinite future. Hamad's injuries necessitated medical care and treatment at the Cleveland Clinic, and may have resulted in permanent partial disability if he does not regain his memory, abilities to concentrate and focus, and sensation, as well as continuing physical pain, mental anguish and emotional distress.

42.     As a direct and proximate result of the forgoing wrongful acts and omissions of the City and Dunn, Sedlak, Benz, Cerba, Huff, Kornatowski, Rodriguez, John Doe 1, John Doe 2 and John Doe 3, and each of them, and the resulting personal injuries sustained by Hamad, he has incurred reasonable and necessary medical, hospital, nursing, radiological, diagnostic, and pharmaceutical expenses for the care and treatment of the above-described injuries, and my reasonably require to continue to incur such expenses in the future.

43.     As a further direct and proximate result of the foregoing wrongful acts and omissions, Hamad has suffered and will continue to suffer lost income, wages and benefits as a result of having to delay and postpone the commencement of his legal career and his employment as a practicing attorney. In addition, Hamad's physical and mental injuries will drastically impair his job performance and ability.

44.     As a further direct and proximate result of the foregoing wrongful acts and omissions, Hamad is unable to participate in his normal recreational hobbies and activities and has suffered the loss of his enjoyment of such activities due to the nature and severity of his injuries.

45.     Official municipal policy, custom and usage of the City is that off duty police officers are sanctioned and authorized to take part-time employment as security officers or guards, and that they are permitted to wear their official Cleveland Police Department uniforms

and to carry departmental issued firearms during the course and scope of their part-time employment during off-duty hours.

46.    Dunn, Sedlak and Benz, and each of them, acted pursuant to the established policies, procedures, customs or usages of the Cleveland Police Department when they savagely attacked and brutally beat Hamad in the exercise of unconstitutionally excessive and unreasonable force.

47.    Cerba, Huff, Kornatowski and Rodriguez, and each of them, also acted pursuant to the established policies, procedures, customs or usages of the Cleveland Police Department when they savagely attacked and brutally beat Hamad in the exercise of unconstitutionally excessive and unreasonable force.

48.    In addition or in the alternative, Proactive is vicariously liable under *respondeat superior* principles for Hamad's personal injuries, pain and suffering, emotional distress and mental anguish arising from the brutal assault and battery committed by Sedlak during the course of his part-time employment by Proactive.

49.    In addition or in the alternative, Jacobs is vicariously liable under *respondeat superior* principles for Hamad's personal injuries, pain and suffering, emotional distress and mental anguish arising from the brutal assaults and batteries committed by Dunn and Benz, and each of them, during the course and scope of their part-time employment by Jacobs.

50.    In addition or in the alternative, by having contracted with Proactive for its security services at the Shooters restaurant, Shooters is liable for Hamad's personal injuries, pain and suffering, emotional distress and mental anguish arising from the brutal assault and battery committed by Sedlak during the course and scope of Sedlak's part-time employment by Proactive.

14

## CLAIMS FOR RELIEF

### Count One
(Fourth Amendment Violation by the City and the City Officers)

51.     Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Fifty (50), inclusive, above as if the same were written herein.

52.     Under the circumstances alleged herein, the Fourth Amendment to the Constitution of the United States imposed a duty on the City and its Police Officers not to use unreasonable and excessive force against Hamad when acting under color of law.

53.     Acting pursuant to and under color of the City's established policies, customs or usages, the City, Dunn, Sedlak and Benz, and each of them, savagely attacked and brutally beat Hamad in the exercise of unconstitutionally excessive and unreasonable force.

54.     Acting pursuant to and under the color of the City's established policies, customs or usages, the City, Cerba, Huff, Kornatowski and Rodriguez, and each of them, savagely attacked and brutally beat Hamad in the exercise of unconstitutionally excessive and unreasonable force.

55.     Acting pursuant to and under the color of the City's established policies, customs or usages, the City, Dunn, Sedlak, Benz, Cerba, Huff, Kornatowski and Rodriguez, and each of them, exercised unconstitutionally excessive and unreasonable force in the restraint of Hamad.

56.     As a direct and proximate result of the City's and the City Officers' wrongful and unconstitutional acts, Hamad suffered and sustained the personal injuries, pain and suffering, emotional distress and mental anguish described above.

57.     The actions of the individual City Officers, and each of them, were committed intentionally to deprive Hamad of his constitutionally-protected rights, or with reckless or

15

callous indifference to his constitutionally-protected rights, thereby entitling Hamad to an award of punitive damages against the City Officers, and each of them, jointly and severally.

Count Two<br>(Procedural Due Process Violation by the City and the City Officers)

58.    Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Fifty-seven (57), inclusive, above as if the same were written herein.

59.    The City knowingly, deliberately or recklessly maintained and implemented policies, procedures, customs or usages that permitted their officers to violate a citizen's rights to life, liberty and/or property secured by the Due Process Clause of the Fourteenth Amendment to the Constitution.

60.    The City knowingly, deliberately or recklessly maintained and implemented policies, procedures, customs or usages of allowing their officers to use unconstitutionally excessive and unreasonable force in the exercise of their official duties.

61.    The City knowingly, deliberately or recklessly maintained and implemented policies, procedures, customs or usages of officially authorizing, approving and sanctioning its police officers to enter into part-time employment during off duty hours as security guards or personnel and of allowing such police officers, wearing their official uniforms and carrying their official firearms, to use unconstitutionally excessive and unreasonable force while they are so engaged or employed.

62.    Acting pursuant to established and promulgated municipal policies, procedures, customs or usages, the City and the City Officers, and each of them, deprived Hamad of his constitutionally-protected interests in his life and/or his liberty without due process of law, in violation of his rights under the Fourteenth Amendment to the Constitution.

63.     As a direct and proximate result of the City's and the City Officers' deprivation of Hamad's protected life and/or liberty rights and interests, Hamad has suffered the personal injuries, pain and suffering, emotional distress and mental anguish described above.

64.     The actions of the individual City Officers, and each of them, were committed intentionally to deprive Hamad of his life and/or his liberty rights without due process of law, or with reckless or callous indifference to Hamad's constitutionally-protected rights, thereby entitling Hamad to an award of punitive damages against the City Officers, and each of them, jointly and severally.

### Count Three
### (Substantive Due Process Violation by the City and the City Officers)

65.     Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Sixty-four (64), inclusive, above as if the same were written herein.

66.     Under the circumstances alleged herein, the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States imposed a duty on the City and its Police Officers not to use unreasonable and excessive force against Hamad when acting under color of law.

67.     Acting pursuant to and under color of the City's established policies, customs or usages, the City, Dunn, Sedlak and Benz, and each of them, savagely attacked and brutally beat Hamad in the exercise of unconstitutionally excessive and unreasonable force.

68.     Acting pursuant to and under the color of the City's established policies, customs or usages, the City, Cerba, Huff, Komatowski and Rodriguez, and each of them, savagely attacked and brutally beat Hamad in the exercise of unconstitutionally excessive and unreasonable force.

17

69.  Acting pursuant to and under the color of the City's established policies, customs or usages, the City, Dunn, Sedlak, Benz, Cerba, Huff, Kornatowski and Rodriguez, and each of them, exercised unconstitutionally excessive and unreasonable force in the restraint of Hamad.

70.  As a direct and proximate result of the City's and the City Officers' wrongful and unconstitutional acts, Hamad suffered and sustained the personal injuries, pain and suffering, emotional distress and mental anguish described above.

71.  The actions of the individual City Officers, and each of them, were committed intentionally to deprive Hamad of his constitutionally-protected rights, or with reckless or callous indifference to his constitutionally-protected rights, thereby entitling Hamad to an award of punitive damages against the City Officers, and each of them, jointly and severally.

Count Four<br>(Inadequate Training and Supervision by the City)

72.  Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Seventy-one (71), inclusive, above as if the same were written herein.

73.  On information and belief, the chief of police and other supervisory and policymaking employees of the City were aware, prior to the savage attack on and brutal beating of Hamad, that City police officers had committed and had been accused of several separate acts of the use of excessive and unreasonable force in connection with security services provided to commercial establishments in the Flats area of Cleveland.

74.  On information and belief, the chief of police and other supervisory and policymaking employees of the City knew or were recklessly indifferent to the knowledge, prior to the attack on Hamad, of such incidents where police officers and/or off-duty police officers

18

had used unconstitutionally excessive and unreasonable force in connection with security services provided to commercial establishments in the Flats area of Cleveland.

75.    Despite such knowledge and information, the City failed to adequately supervise and train the City Officers, and each of them, so as to enable them to engage in providing security to the commercial establishments in the Flats area of Cleveland without using excessive or unreasonable force.  On information and belief, the City Officers received little or no ongoing or continuing training or supervision in the proper and appropriate use of force in connection with such circumstances.

76.    The City and its police department acted intentionally, recklessly or with gross negligence in failing to adequately train and supervise the City Officers, and each of them, in the proper and appropriate use of force in connection with such circumstances.

77.    The City's failure to adequately train an supervise the City Officers, and each of them, was under the circumstances, so reckless, grossly negligent or deliberately indifferent to the needs of the public that misconduct and violations of individual legal rights were the probable results;  that is to say, the City's indifference reflects a deliberate or conscious policy choice by the City to allow constitutional violations to occur.

78.    The deprivation of Hamad's constitutional rights was directly and proximately caused by the City's failure to provide adequate training and supervision to the City Officers, and each of them.

Count Five
(Negligent Assignment and Retention by the City)

79.    Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Seventy-nine (79), inclusive, above as if the same were written herein.

19

80.    On information and belief, the chief of police and other supervisory and policymaking employees of the City were aware or should have known, prior to the savage attack on and brutal beating of Hamad, that City Officers had been involved in violent and combative behavior.

81.    On information and belief, the chief of police and other supervisory and policymaking employees of the City knew or were recklessly indifferent to the knowledge, prior to the attack on Hamad, of such incidents where city officers had engaged in violent and combative behavior.

82.    Despite such knowledge and information, The City and its police department acted intentionally, recklessly or with gross negligence in allowing police officers and/or off-duty police officers with violent and combative incident in their records to work in the Flats area of Cleveland.

83.    The City's approval of off-duty security work to commercial establishments in the Flats area of Cleveland to officers involved in violent and combative behavior was under the circumstances, so reckless, grossly negligent or deliberately indifferent to the needs of the public that misconduct and violations of individual legal rights were the probable results;  that is to say, the City's indifference reflects a deliberate or conscious policy choice by the City to allow constitutional violations to occur.

84.    The deprivation of Hamad's constitutional rights was directly and proximately caused by the City's reckless, grossly negligent, or deliberately indifferent decision to approve off-duty security work to commercial establishments in the Flats area of Cleveland to officers who were involved in violent and combative incidents.

## Count Six
### (Failure to Direct by the City)

20

85.    Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Eighty-four (84), inclusive, above as if the same were written herein.

86.    On information and belief, the chief of police and other supervisory and policymaking employees of the City were aware or should have known, of the savage attack on and brutal beating of Hamad.

87.    On information and belief, despite the knowledge of the City Officers' deprivation and violation of Hamad's civil rights, either no investigation was initiated or a grossly inadequate investigation was initiated into the savage attack on and brutal beating of Hamad.

88.    The City's investigation into the violation of Hamad's civil rights was under the circumstances, so reckless, grossly negligent or deliberately indifferent as to reflect a deliberate or conscious policy choice by the City to allow constitutional violations to occur.

Count Seven
(Eight Amendment Violations Against the City)

89.    Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Eighty-eight (88), inclusive, above as if the same were written herein.

90.    The City, acting pursuant to its official municipal policies, procedures, customs and usages, does not provide adequate medical care and treatment to the known injuries of a prisoner like Hamad who has been arrested and temporarily incarcerated in a City jail while awaiting his arraignment.  The City's official municipal policies, practices, procedures, customs and usages in this respect is to fail to take appropriate action or to provide adequate medical care and treatment in deliberate indifference to the known injuries of a prisoner like Hamad.

21

91.     John Doe 3, who was provided by the City, acted and failed to act at all relevant times, in stating that he could provide no examination, care, or treatment other than furnishing Hamad with aspirin and then by failing actually to provide such pain relief to Hamad, in accordance with such official municipal policies, practices, procedures, customs or usages.

92.     John Doe 1 and John Doe 2 were reckless, grossly negligent, or deliberately indifferent in failing to provide Hamad with any medical attention despite Hamad's visible injuries and complaints.

93.     The City's failure to provide adequate medical care and treatment to its incarcerated prisoners evidences the City's deliberate indifference to such known medical needs and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Constitution.

94.     As a direct and proximate result of the City's unconstitutional indifference to Hamad's injuries, he suffered the worsening of his injuries and additional pain and suffering, emotional distress and mental anguish.

<u>Count Eight</u>
<u>(State Constitutional Claims Against the City and the City Officers)</u>

95.     Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Ninety-Four (94), inclusive, above as if the same were written herein.

96.     The foregoing acts and omissions by the City and the City Officers, and each of them, also violates the liberties, provisions, rights and guarantees secured to Hamad by the Constitution of the State of Ohio.

97.     As the direct and proximate result of the City's and the City Officers' deprivation of Hamad's rights, liberties and interests protected by the Constitution of the State of Ohio,

Hamad suffered and sustained the personal injuries, pain and suffering, emotional distress and mental anguish described above.

## Count Nine
### (State Tort Claims for Assault, Battery and Personal Injuries Against All Defendants)

98.    Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Ninety-Seven (97), inclusive, above as if the same were written herein.

99.    The above-described actions by the City Officers, and each of them, constitute the common law torts of assault and battery on Hamad, resulting in the personal injuries, pain and suffering, emotional distress and mental anguish described above.

100.    The City Officers, and each of them, knowingly and recklessly, or in the alternative, negligently and carelessly, caused unnecessary harm and injury to Hamad.

101.    The City is vicariously liable to Hamad under *respondeat superior* principles for his injuries caused by the intentional, reckless or negligent acts of the City Officers, and each of them, who at the time of inflicting the injury were acting within the course and scope of their duties as employees of the City.

102.    Proactive is vicariously liable to Hamad under *respondeat superior* principles for his injuries caused by the intentional, reckless or negligent acts of Sedlak, and any other City Officer or individual who may have been employed by Proactive, who at the time of inflicting the injury was acting within the course and scope of his duties as an employee of Proactive.

103.    Jacobs is vicariously liable to Hamad under *respondeat superior* principles for his injuries caused by the intentional, reckless or negligent acts of Dunn and Benz, and each of them, and any other City Officer or individual who may have been employed by Jacobs, who at the

time of inflicting the injury was acting within the course and scope of his duties as an employee of Jacobs.

104.  Shooters is vicariously liable to Hamad for his injuries caused by the intentional, reckless or negligent acts of the City Officers, and each of them, because Shooters contracted for or otherwise acquiesced in and benefited from their provision of private duty security services at the Shooters restaurant in the Flats area of Cleveland.

Count Ten
(False Arrest and Malicious Prosecution by the City Officers)

105.  Hamad realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through One Hundred Four (104), inclusive, above as if the same were written herein.

106.  Dunn, Benz and Sedlak, and each of them, falsely arrested Hamad and engaged in malicious prosecution against Hamad.

107.  Hamad's injuries, pain and suffering, emotional distress and mental anguish detailed above were a direct and proximate result of the false arrest and malicious prosecution.

**RELIEF REQUESTED**

Wherefore, Plaintiff, Saied H. Hamad, demands judgment against Defendants, and each of them, jointly and severally, for compensatory damages in the amount of Three Million Dollars ($3,000,000.00) for his physical injuries, pain and suffering, emotional distress, mental anguish and economic losses, including without limitation prospective lost income, and for the intentional or reckless violation of his constitutional and statutory rights; for punitive damages in the amount of Five Million Dollars ($5,000,000.00) for the willful, wanton and malicious conduct of Defendants; and for his reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and the costs of this action, and such other further relief as the Court may deem just and proper.

24

Saied N. Hamad
pro se
783 Watten Lane
Westerville, Ohio 43081
(614) 537-3333
E-Mail: saiednhamad@yahoo.com


## JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, on all issues so triable.


Saied N. Hamad